# JOSEPH KOWAL v. CITY OF MINNEAPOLIS.[1]

March 10, 1950.

No. 35,081.

*John F. Bonner,* City Attorney, and *Carsten L. Jacobson,* Assistant City Attorney, for appellant.

*G. P. Mahoney* and *J. W. Cragg,* for respondent.

LORING, CHIEF JUSTICE.

This case comes here on appeal from an order denying an alternative motion for judgment notwithstanding the verdict of $13,000 for personal injuries or for a new trial.

---

[1]Reported in 41 N. W. (2d) 580.

Plaintiff was injured on August 4, 1946, by the breakage of an alleged defective railing on which he leaned at the intersection of Humboldt and Forty-seventh avenues north in Minneapolis. On the day of the accident, he and his wife were waiting at the intersection for the purpose of taking passage on a bus. Humboldt avenue runs north and south; Forty-seventh avenue runs east and west but does not continue west across Humbolt because of Shingle Creek, which borders the west side of Humboldt avenue. This creek crosses Humboldt under a concrete bridge a short distance south of Forty-seventh avenue. Extending north from the west side of the bridge for about 66 feet is a wooden fence, maintained by the city. This fence consists of five 6-inch posts spaced at about 15-foot intervals with a single 2 x 10-inch plank between each post. The planks had been painted in black-and-white stripes. Their purpose was to protect the public from Shingle Creek, whose bank commenced at the posts and declined at about a 45-degree angle to the water. No sidewalk had been built on the west side of Humboldt avenue, but there was a regular bus stop at this point. The grass and vegetation between the railing and the street pavement—a distance of 8 to 11 feet—were worn off by constant use of pedestrians waiting for buses. Plaintiff testified that he had taken a bus at this place every morning for 10 or 15 years and had seen many other people waiting there for buses. Others testified to the common use by bus passengers of that area of the street between the railing and the pavement and that children sometimes walked to school on that side of Humboldt avenue.

While waiting for the bus on the occasion when he was injured, plaintiff leaned against the railing on his elbows. The plank on which he rested suddenly gave way, and he was precipitated down the embankment until he hit a tree. The fall resulted in a broken hip. On the trial, the jury returned a verdict for plaintiff.

■ Defendant contends here that the Minneapolis city charter, c. 8, § 19, gives the city immunity in the area in question because no sidewalk had been built. Section 19 provides in part:

"* * * Nor shall any such action be maintained for any defect in the street, until the same shall have been graded; nor for the insufficiency of the ground where sidewalks are usually constructed, when no sidewalk is built."

The general liability of cities for negligence in relation to maintenance of streets, sidewalks, and sewers is too well established to justify citation of authorities. The question presented here is the applicability of the charter provision to the facts of the case at bar. In our view, it does not apply. Quite obviously, the immunity covers at most only "insufficiency of the ground" where sidewalks would ordinarily be built. It does not reach the defect in a railing placed to protect people from falling down an embankment when using an area such as that here under consideration. If a sidewalk had been laid in the area used by pedestrians waiting for the bus, the city would be liable for negligence in maintaining the barrier erected for their protection. The "insufficiency of the ground," if any, had no connection as cause with plaintiff's injury, which would have occurred just the same if a sidewalk had been laid. That must be conceded.

In Neidhardt v. City of Minneapolis, 112 Minn. 149, 153, 127 N. W. 484, 486, 29 L.R.A.(N.S.) 822, plaintiff, while walking on Minnehaha parkway, was forced off the road by an oncoming automobile and, in her attempt to escape, stepped into an open drain near the street. Among the defenses which the city asserted was the same section of the charter now urged by defendant here. This court held:

"* * * The place where this accident occurred is not within either of the exceptions in the above paragraph. The negligence claimed was not for failing to grade or improve the way; but, if there was negligence, it was affirmatively so by reason of improper construction."

Cf. Miller v. City of Duluth, 134 Minn. 418, 159 N. W. 960.

The trial court rightly considered that the immunity clause had no application. Hence, the only question is whether the city should

have foreseen that its failure to maintain the fence properly would result in harm to a pedestrian. The area on the west side of Humboldt avenue had been used for many years as a regular bus stop. Children sometimes used it to walk to and from school. The city knew that on occasion they played on the fence, for in 1944 it had put up a plank, extending from a tree by the creek to the fence, as additional support to protect the children. In our opinion, the city should have anticipated harm to some pedestrian from its failure to properly maintain the railing, and it is therefore responsible for the breach of its duty.

■ The fence presented an outward appearance of being substantial, but was, in fact, defective. The evidence of its defective condition and the existence of that condition for a period of time sufficient to charge the city with notice thereof was sufficient to go to the jury and to support a finding of negligence on the part of the city. The evidence does not justify a holding that plaintiff was guilty of contributory negligence as a matter of law.

Order affirmed.